UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PATRICIA M. PRYOR, :
    Plaintiff, :
     :
    v. : C.A. No. 16-376M
     :
NANCY A. BERRYHILL, ACTING :
COMMISSIONER OF SOCIAL SECURITY, :
    Defendant. :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Arguing that she is not capable of sitting, standing or walking for long enough to permit even sedentary work based on physical limitations caused by an injury to her right knee and ankle that required three surgeries, Plaintiff Patricia M. Pryor has moved for reversal of the decision of the Commissioner of Social Security (the "Commissioner"), denying Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). Plaintiff contends that the Administrative Law Judge ("ALJ") erred in relying on the opinion of state agency examining physician, Dr. Thomas Bennett, and in discounting the opinion of her primary care physician, Dr. Jack Mourad, as the foundation for the determination that Plaintiff is not disabled because she retains the residual functional capacity ("RFC") to work at slightly less than the light exertional level.[1] Defendant Nancy A. Berryhill ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that the ALJ's findings are untainted by error and are sufficiently supported by substantial evidence. Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 15) be GRANTED.

I. **Background**[2]

After working for many years as a customer service representative for the Rhode Island Department of Motor Vehicles, on August 25, 2010, Plaintiff slipped on stairs while at work; her right leg folded underneath her, twisting the right knee and right ankle. Tr. 401. When the pain and swelling persisted for a week, she sought treatment at the Garden City Emergency Room and then consulted her primary care physician, Dr. Jack Mourad. Id. In October 2010, Dr. Mourad referred her to a specialist, Dr. Paul Fadale of University Orthopedics. Tr. 319. Dr. Fadale performed arthroscopic surgery for a torn meniscus in December 2010 and cleared Plaintiff to return to work in March 2011, which she did. Tr. 316, 313.

On July 26, 2011, her alleged onset date, Plaintiff reinjured her right ankle and knee. Tr. 231. Because both injuries affected the same limb, her caregivers determined that her ankle needed to be treated first, following which the knee could be addressed. Tr. 293-94. After being seen by a nurse practitioner and getting clearance from worker's compensation, in May 2012, Plaintiff initiated treatment with Dr. Anthony Mechrefe of West Bay Orthopedics for right ankle pain. In September 2012, he performed surgery on Plaintiff's right ankle. Tr. 294-95. By

---

[2] In addition to her claim of disability based on the injury to her right knee and ankle, which is the focus of this case, Plaintiff also alleged mental health impairments, including anxiety and post-traumatic stress disorder. These allegations are not pertinent to the issues raised in this case and will not be addressed in this report and recommendation.

December 2012, Plaintiff reported feeling "pretty good," with standing and walking tolerance of sixty to ninety minutes and walking with a relatively non-antalgic gait. Tr. 278. By January 2013, Dr. Mechrefe opined that Plaintiff's ankle had significantly improved and no longer prevented her from working. Tr. 277 ("She is essentially at the point now where her knee is bothering her more than her ankle and that is keeping her from going back to her job."). While Plaintiff denied working at the hearing, Tr. 37, the record reflects that she did return to work in 2013, after the ankle surgery, Tr. 138, 303, 329, albeit at a below-"substantial gainful activity" level. Tr. 12.

Dr. Mechrefe referred her back to Dr. Fadale to assess the right knee, Tr. 277, whom she saw in February 2013, Tr. 310. Based on his diagnosis of a small medial meniscal tear, on April 5, 2013, Dr. Fadale performed a second arthroscopic surgery on Plaintiff's right knee. Tr. 304, 307. By August 2013, Dr. Fadale found that Plaintiff had reached maximum medical improvement with good range of motion, no swelling, no tenderness, minimal weakness and independent ambulation; he cleared her for full duty work as tolerated. Tr. 327.

In the fall of 2014, Dr. Mechrefe and Dr. Fadale each opined on the status of Plaintiff's recovery. Dr. Mechrefe observed that the ankle had recovered well from the surgery in that all pre-operative pain was gone, but that Plaintiff was left with residual decreased strength; he recommended ongoing use of a brace and ascribed a 14% lower extremity impairment. Tr. 477. He also noted that ambulation with a "mild antalgic reciprocal gait" is permanent and expressed his hope that this "does not stop her from doing most of the things she wants to do in life." Tr. 476. Dr. Fadale observed that Plaintiff still walked with an uneven gait, but was independent in walking. Tr. 484.

At the same time that her right knee and ankle were being treated by these specialists, Plaintiff was also regularly seeing her primary care physician, Dr. Jack Mourad. Tr. 351-412, 447-56. Dr. Mourad's notes are almost entirely indecipherable, except for a handwritten entry (written in a different hand from the rest of each note) at the top of some of them, which sets out Plaintiff's subjective complaints; these sometimes contain Plaintiff's description of increasing or daily ankle and knee pain. E.g., Tr. 358, 374. Plaintiff saw Dr. Mourad regularly over the period from 2010 to 2015, generally monthly based on the notation "1 mo f/u" at the top of many of the notes. E.g., Tr. 367, 370; see also Tr. 374 ("2 mo f/u"). From the ALJ's detailed chronology of Plaintiff's subjective reports regarding her knee and ankle to Dr. Mourad, Tr. 18, it appears that her complaints of pain preceded or immediately followed surgery and that references to improvement, Tr. 358, or "feeling better," Tr. 370, followed recovery from surgery. To the extent that these notes are readable, it appears that Dr. Mourad was merely monitoring the knee/ankle treatment being provided by the specialists and was not performing his own clinical diagnostic techniques or treatment other than the prescription of pain medication. E.g., Tr. 370 ("feeling better – will be seeing Dr. Fadale soon"). Plaintiff also complained to Dr. Mourad about joint pain, hip pain, low back pain and hand pain with stiff fingers. Tr. 367, 378, 451, 456, 492. There is no evidence that any of these complaints resulted in treatment.

## II. Opinion Evidence

The ALJ found that both of the state agency reviewing physicians – Dr. Youssef Georgy at the initial phase, and Dr. Thomas Bennett at reconsideration – had submitted opinions entitled to substantial evidentiary weight. Tr. 24. However, Dr. Bennett's conclusions regarding Plaintiff's stand/walk and postural abilities were more limited than the limitations endorsed by Dr. Georgy, Tr. 74, and the ALJ adopted Dr. Bennett's analysis as the basis for both the

4

hypothetical posed to the vocational expert, Tr. 16, and as the foundation for the finding that Plaintiff's RFC was limited to no more than a total of five hours of standing/walking in a work day, and to no more than occasional climbing, kneeling and crawling. Tr. 16. Signed on April 25, 2014, Tr. 73-75, the Bennett opinion was based on a file that included all of the records related to Plaintiff's three surgeries on the knee and ankle, as well as Dr. Mechrefe's opinion that Plaintiff's limp would be permanent. Tr. 75. Dr. Bennett specifically referenced the three surgeries, including (consistent with the treating record) his expert observation that "[c]laimant still has knee & ankle sx despite good surgical result. Gait OK. ROM ok." Id.

The only other medical opinion relating to the right knee and ankle was signed by Dr. Mourad on February 23, 2015. Tr. 458. Contrary to the opinion of Dr. Fadale's physical therapist only three months after ankle surgery that Plaintiff had reached stand/walk tolerance of sixty to ninety minutes, Tr. 278, and of both Dr. Fadale, Tr. 327, and Dr. Mechrefe, Tr. 277, that she was cleared to return to work, Dr. Mourad opined that Plaintiff could walk less than one block and sit or stand for no more than ten minutes at one time; in addition, he concluded that the total time she could sit, stand or walk is less than two hours in an eight-hour work day. Tr. 459. Dr. Mourad's opinion does not appear to consider Plaintiff's ability to return to work in between the ankle and second knee surgery in 2013, Tr. 138, 303, 329, albeit at a sub-SGA level. Tr. 12. Despite the lack of any reference to the need to elevate her legs in any treating note, Dr. Mourad opined that Plaintiff needed to elevate her legs to chest height sixty percent of the day. Tr. 460. Overall, Dr. Mourad concluded that Plaintiff would be off task twenty-five percent or more of the work day, although he also opined that she would not be likely to miss work as a result of her impairments or for treatment of them. Tr. 461.

### III.   Travel of the Case

Plaintiff protectively filed an application for DIB benefits on April 15, 2013, alleging a disability onset date of July 26, 2011. Tr. 130-37, 158. Her application was denied initially and on reconsideration. Tr. 54-79, 82-84, 86-88. Following a hearing on March 12, 2015, at which Plaintiff was represented by counsel, on April 30, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 7-31. The Appeals Council denied Plaintiff's request for review, Tr. 1-3, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff has exhausted her administrative remedies, and this case is now ripe for judicial review under 42 U.S.C. § 405(g).

## IV.     Issues Presented

Plaintiff's motion for reversal challenges the weight afforded by the ALJ to the opinion evidence used in establishing Plaintiff's RFC.

## V.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

## VI.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     Five-Step Analytical Framework

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims). That is, once the ALJ finds that a claimant cannot return to the prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the local or national economy. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). To meet this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

**B.       Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

**VII. Analysis**

Plaintiff's quixotic challenge to the ALJ's RFC assessment asks the Court to focus on the reality that her right knee and ankle injury caused pain and a permanent limp and required three surgeries and related follow-up treatment. Her argument founders because Dr. Bennett's expert opinion expressly took that reality into consideration, as well as because the ALJ's careful and detailed decision reflects that she considered each of the three surgeries, including the

9

documented limitations and treatment that followed each. Her argument also fails because the ALJ's determination to afford "little evidentiary weight" to Dr. Mourad's opinion is properly based on "good reasons" that are well anchored in the substantial evidence of record.

To overcome these headwinds, Plaintiff seizes on the ALJ's obvious scrivener's error, appearing at the end of her decision, which states, "[Plaintiff's] treatment course was generally conservative with <u>no surgeries</u> or chronic emergency room visits." Tr. 24 (emphasis supplied). While the latter fact ("no chronic emergency room visits") is accurate, the proposition that this Plaintiff had "no surgeries" is simply wrong. However, when read in the context of what happened at the hearing, and in light of the balance of the ALJ's decision, it is plain that this is an error affecting the accuracy of the sentence in which it appears, but not an error that infected or tainted the ALJ's analysis. See Cruz o/b/o Fonseca v. Colvin, C.A. No. 14-526ML, 2016 WL 1068860, at *10 (D.R.I. Feb. 18, 2016), adopted, 2016 WL 1069059 (D.R.I. Mar. 17, 2016) (obvious scrivener's error; remand not warranted); Hudon v. Astrue, Civil No. 10-cv-405-JL, 2011 WL 4382145, at *4 (D.N.H. Sept. 20, 2011) (scrivener's error does not require reversal where ALJ's intent is apparent) (citing Douglas v. Astrue, C/A No. 1:09-1349-CMC-SVH, 2010 WL 3522298, at *3-5 (D.S.C. Sept. 3, 2010) (collecting cases)).

For starters, the hearing transcript makes crystal clear that the ALJ was well aware of Plaintiff's three surgeries. Plaintiff's counsel included them in her opening statement, noting that, "[d]espite these procedures, the claimant walks with a limp, which is permanent." Tr. 36-37. Confirming that the ALJ understood, the transcript reflects that the examination of Plaintiff regarding the knee and ankle complaints opened with the ALJ's *sua sponte* questions targeting the three surgeries. Tr. 40. The ALJ's decision affirms these hearing references, establishing clearly that the "no-surgeries" error in the sentence on page 24 does not reflect a failure by the

ALJ to properly review or weigh the evidence of the surgeries. To the contrary, the decision is replete with page after page of detailed descriptions of each surgery, as well as their impact on Plaintiff and her ability to function. Tr. 16-18, 21-22. Further, Dr. Bennett, whose expert opinion was pivotal to the ALJ's ultimate determination of no disability, expressly referenced the three surgeries, making clear that he incorporated them into his analysis.

I also find no error in the ALJ's determination to give Dr. Mourad's opinion limited weight because of its internal inconsistency and its inconsistency with the other evidence of record, including the evidence of Plaintiff's positive response to the treatment with Drs. Fadale and Mechrefe and of Plaintiff's activities, including her ability to drive, shop and work at least briefly in 2013. Tr. 19-24. The ALJ properly found Dr. Mourad's opinion that Plaintiff would be off task more than twenty-five percent of the day to be inconsistent with his opinion that Plaintiff would never miss work. Tr. 24-25, 461. Further, there is no error in the ALJ's finding that Dr. Mourad's opinion that Plaintiff needed to elevate her legs to chest height sixty percent of the day clashes with record evidence showing no or mild edema/swelling, e.g., Tr. 246, 253, 278, and is unsupported by any treating source who endorsed such a limitation. Tr. 24-25. Nor is there error in the ALJ's assessment that these inconsistencies between Dr. Mourad's opinion and the other evidence in the record constitute "good reasons" to discount it. See 20 C.F.R. § 404.1527(c)(3)-(4).[3] And with a treating source opinion not entitled to controlling weight, I also find that the ALJ committed no error in resolving the conflict between opinions of Dr. Mourad and Dr. Bennett by relying on the latter. See Rivera-Torres v. Sec'y Health & Human Servs., 837 F.2d 4, 5 (1st Cir. 1988).

---

[3] The Commissioner has issued new regulations on the evaluation of opinion evidence; however, those regulations are only applicable to cases filed after March 27, 2017. See 20 C.F.R. § 404.1520c.

In the end, the Court is bound by the principle that the ALJ is responsible for weighing and resolving conflicts in the evidence. Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001); see Greene v. Astrue, Civil Action No. 11-30084-KPN, 2012 WL 1248977, at *3 (D. Mass. Apr. 12, 2012) (Social Security claimant "must show not only the existence of evidence in the record *supporting* her position but must also demonstrate that the evidence relied on by the ALJ is either insufficient, incorrect, or both") (emphasis in original). Accordingly, I recommend that the Court affirm the ALJ's decision and deny Plaintiff's motion to reverse.

## VIII. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 15) be GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 9, 2017